# **EXHIBIT B**

**PECKAR & ABRAMSON, P.C.**
70 Grand Avenue
River Edge, New Jersey 07661
(201) 343-3434
Attorneys for Plaintiff
Winter Services, Inc.
Attorney ID No.: 075972014

| | |
|---|---|
| WINTER SERVICES, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>CSX INTERMODAL TERMINALS, INC.,<br><br>       Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: HUDSON COUNTY<br>DOCKET NO.:<br><br>       CIVIL ACTION<br><br>       **COMPLAINT** |

Plaintiff, Winter Services, Inc. ("Winter Services"), having its principal place of business at 33 Daret Drive, Ringwood, NJ 07456, by way of its Complaint says:

## THE PARTIES

1.    At all times herein mentioned, Winter Services was and is a corporation organized and existing under the laws of the State of New Jersey, and is engaged in the business of snow and ice removal and management services.

2.    Upon information and belief, defendant CSX Intermodal Terminals, Inc. ("CSX"), is a foreign corporation, incorporated in the State of Delaware, engaged in providing transportation services to third party customers, with a principal place of business located at 550 Water Street, Jacksonville, FL 32202.

## BACKGROUND FACTS COMMON TO ALL COUNTS

3.    Upon information and belief, in or around December 12, 2011, Winter Services entered into an agreement with CSX, whereby Winter Services was to provide

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

certain snow and ice management services in accordance with specified rates and fee schedules with respect to the property operated by CSX, located at 700 Fish House Road, South Kearny, NJ 07032.  Attached hereto as **Exhibit "A"** is a true and correct copy of the Agreement.

       4.     Winter Services fully performed its snow and ice removal obligations through February 2016.

       5.     At the time of the filing of this Complaint Winter Services is still owed payment for the services that it had already rendered.  Attached hereto as **Exhibit "B"** is a true and correct copy of Winter Services' outstanding invoices submitted to CSX for the property located at 700 Fish House Road, South Kearny, NJ 07032.

       6.     Despite due demand, CSX has not rendered payment, nor has it indicated an intention to satisfy its debt to Winter Services.

       7.     To date, the total outstanding balance due and owing to Winter Services by CSX is $202,129.15.

## FIRST COUNT

### (Breach of Contract)

       8.     Winter Services repeats and realleges the allegations of Paragraphs 1 through 7 as if the same were fully set forth herein.

       9.     As alleged above, CSX contracted with Winter Services to perform snow and ice removal services at 700 Fish House Road, South Kearny, NJ 07032.

       10.     Winter Services has duly performed all of the services required to be performed by it under the contacts.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

11.     Despite due demand, CSX has failed and refused to make payment to Winter Services for the balance due and owing on the contract and invoices.

12.     As a direct and proximate result of CSX's breach, Winter Services has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff, Winter Services demands judgment against defendant CSX, awarding Winter Services damages in the amount $202,129.15, including but not limited to, compensatory and consequential damages, costs, interest, attorney's fees, and such other relief as this Court deems equitable and just.

## SECOND COUNT

### (Breach of Oral Contract)

13.     Winter Services repeats and realleges the allegations of Paragraphs 1 through 12 as if the same were fully set forth herein.

14.     In the alternative of CSX being bound by the written contract, CSX is bound by its oral representations and conduct to compensate Winter Services in exchange for snow and ice removal services.

15.     Winter Services has duly performed all of the services required to be performed by Winter Services under the contact.

16.     Despite due demand, CSX has failed and refused to make payment to Winter Services for the balance due and owing on the contract and invoices.

17.     As a direct and proximate result of CSX's breach, Winter Services has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff, Winter Services demands judgment against defendant CSX, awarding Winter Services damages in the amount $202,129.15, including but not

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

3

limited to, compensatory and consequential damages, costs, interest, attorney's fees, and such other relief as this Court deems equitable and just.

**THIRD COUNT**

**(Breach of Implied Contract)**

18.　Winter Services repeats and realleges the allegations of Paragraphs 1 through 17 as if the same were fully set forth herein.

19.　In the alternative of CSX being bound by an express contract, CSX's conduct also resulted in the breach of an implied-in-fact contract.

20.　The parties' conduct implied an obligation on the part of CSX to compensate Winter Services with regard to Winter Services' providing of snow and ice removal services for the property located in South Kearny, NJ.

21.　Throughout the course of the contract, Winter Services submitted invoices in accordance with specified rates and fee schedules agreed to by the parties.

22.　Winter Services has duly performed all of the services required to be performed by Winter Services under the contact.

23.　Despite due demand, CSX has failed and refused to make payment to Winter Services for the balance due and owing on the contract and invoices.

24.　As a direct and proximate result of CSX's breach, Winter Services has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff, Winter Services demands judgment against defendant CSX, awarding Winter Services damages in the amount $202,129.15, including but not limited to, compensatory and consequential damages, costs, interest, attorney's fees, and such other relief as this Court deems equitable and just.

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

## FOURTH COUNT

### (Promissory Estoppel)

25.　Winter Services repeats and realleges the allegations of Paragraphs 1 through 24 as if the same were fully set forth herein.

26.　CSX's promise to pay Winter Services compensation in accordance with specified rates and fee schedules with respect to snow and ice removal services at the properties was clear and unambiguous.

27.　As alleged above, CSX breached that promise.

28.　As alleged above, Winter Services relied on CSX's promises in agreeing to provide snow and ice removal services.

29.　Winter Services' reliance was reasonable and foreseeable.

30.　As a direct and proximate result of CSX's acts as alleged above, Winter Services has been damaged in the amount $202,129.15.

**WHEREFORE**, Plaintiff, Winter Services demands judgment against defendant CSX, awarding Winter Services damages in the amount $202,129.15, including but not limited to, compensatory and consequential damages, costs, interest, attorney's fees, and such other relief as this Court deems equitable and just.

## FIFTH COUNT

### (Unjust Enrichment)

31.　Winter Services repeats and realleges the allegations of Paragraphs 1 through 30 as if the same were fully set forth herein.

32.　CSX has benefitted through the ice and snow removal services rendered by Winter Services.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

5

33.     Despite the benefit conferred by Winter Services, CSX has not rendered complete payment for the services provided to it.

34.     As a result of CSX's failure and refusal to make payment to Winter Services for the balance due and owing on the contract, despite payment having been duly demanded by Winter Services, CSX has been unjustly enriched, while Winter Services has been damaged.

**WHEREFORE**, Plaintiff, Winter Services demands judgment against defendant CSX, awarding Winter Services damages in the amount $202,129.15, including but not limited to, compensatory and consequential damages, costs, interest, attorney's fees, and such other relief as this Court deems equitable and just.

## SIXTH COUNT

### (Quantum Meruit)

35.     Winter Services repeats and realleges the allegations of Paragraphs 1 through 34 as if the same were fully set forth herein.

36.     There remains a balance due and owing on the contracts in the amount of $202,129.15.

37.     Despite due demand, CSX has failed and refused to make payment to Winter Services.

38.     Winter Services has not received payment in full pursuant to the terms and conditions of the contracts and, as such, has been damaged.

**WHEREFORE**, Plaintiff, Winter Services demands judgment against defendant CSX, awarding Winter Services damages in the amount $202,129.15, including but not

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

limited to, compensatory and consequential damages, costs, interest, attorney's fees, and such other relief as this Court deems equitable and just.

### SEVENTH COUNT

#### (Account Stated)

39.   Winter Services repeats and realleges the allegations of Paragraphs 1 through 38 as if the same were fully set forth herein.

40.   There is due and owing to Winter Services from CSX the amount of $202,129.15 on a certain book account, which has been previously demanded in the form of invoices and correspondence to CSX.

41.   CSX has failed to pay Winter Services the amount due and owing despite payment having been duly demanded by Winter Services.

42.   CSX has failed and refused to remit payment to Winter Services.

**WHEREFORE**, Plaintiff, Winter Services demands judgment against defendant CSX, awarding Winter Services damages in the amount $202,129.15, including but not limited to, compensatory and consequential damages, costs, interest, attorney's fees, and such other relief as this Court deems equitable and just.

PECKAR & ABRAMSON, P.C.
Attorneys for Plaintiff
Winter Services, Inc.

Dated:  November 9, 2017                 By: _____
                                              PATRICK T. MURRAY

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

7

## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to Rule 4:25-4, Gerard J. Onorata, Esq., is hereby designated trial counsel.

PECKAR & ABRAMSON, P.C.
Attorneys for Plaintiff,
Winter Services, Inc.

Dated:  November 9, 2017                    By: _____
                                                PATRICK T. MURRAY

## CERTIFICATION OF COMPLIANCE WITH R. 1:38-7(c)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

PECKAR & ABRAMSON, P.C.
Attorneys for Plaintiff,
Winter Services, Inc.

Dated:  November 9, 2017                    By: _____
                                                PATRICK T. MURRAY

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

### CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned hereby certifies, upon information and belief, that the matter in controversy is not the subject of any other action pending in any court or arbitration proceeding, there is no other action or arbitration proceeding contemplates, and there are no other parties who shall be joined in this action.

I hereby further certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

PECKAR & ABRAMSON, P.C.
Attorneys for Plaintiff,
Winter Services, Inc.

Dated: November 9, 2017

By: _____
PATRICK T. MURRAY

#496974.1

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

9

# EXHIBIT A

# CSX INTERMODAL TERMINALS, INC.
## CONTRACTOR SERVICE AGREEMENT
### KEARNY TERMINAL SNOW REMOVAL SERVICES

THIS AGREEMENT (collectively with all appendices and exhibits attached hereto and incorporated herein by reference, this "Agreement") is made as of October 4, 2011 between WINTER SERVICES, INC., a New Jersey corporation, ("Contractor") whose address is 11 Skyline Drive, Montville, NJ 07045, Attention: Bob Wolotz; and CSX INTERMODAL TERMINALS, INC., a Delaware corporation, ("CSXI Terminals"), whose address is 550 Water Street, Jacksonville, Florida 32202, Attention: Stephen DeMarle.

#### WITNESSETH:

CSXI Terminals operates an intermodal terminal and related facilities at the Kearny Terminal located at 700 Fish House Road, Kearny, NJ 07032 (the "Terminal") providing transportation services to third-party customers.

CSXI Terminals desires to engage a party with expert knowledge, special experience and personnel qualified to perform certain services as herein described, at the Terminal. Contractor has the requisite expertise, knowledge and qualified personnel, and desires to perform such services, at the Terminal, all in accordance with the terms and provisions of this Agreement.

THAT for and in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, CSXI Terminals and Contractor hereby covenant and agree as follows:

1. **Services.** Contractor agrees to perform the following service (the "Service") at the Terminal: Snow Plowing Services, as more specifically described in Exhibit A, attached hereto and made a part hereof, including, without limitation, any additional service not specifically described herein, provided that such additional service is within the scope of the service specifically described herein, is consistent therewith or is incidental thereto. Contractor shall furnish all personnel, labor, materials, tools, transportation, machinery, supplies, supervision, administration and permits (unless otherwise provided herein) necessary to complete the Service as provided herein, all of which shall be included in the definition of the "Service." Contractor assumes all risk of injury to or death of any such personnel and risk of loss of or damage to any such materials, tools, means of transportation, machinery or supplies.

2. **Contract Price and Payment Terms.** CSXI Terminals shall pay Contractor in accordance with the rate schedule set forth in Exhibit C attached hereto and made a part hereof, as full and complete payment for Services performed pursuant to this Agreement (the "Contract Price"). Payment terms are Net Thirty (30) Days from receipt of a valid invoice from Contractor.

3. **Term.** Contractor shall commence performance of the Services on or about October 10, 2011 (the "Effective Date"), and subject to the provisions of this Agreement, shall continue for a term of five (5) years (the "Term"), unless otherwise terminated in accordance with the terms herein. Regardless of the termination of this Agreement, upon request of CSXI Terminals, Contractor shall complete any Services commenced by Contractor prior to the termination of this Agreement.

4. **Additional Terms and Conditions.** The Additional Terms and Conditions attached hereto are a part of this Agreement and incorporated herein by this reference.

WITNESS the following signatures:

WINTER SERVICES INC.

By: _____

Name: Mark E. Moore

Title: V.P.

Date: 10-27-11

CSX INTERMODAL TERMINALS, INC.

By: _____

Name: Fran Chinnici

Title: VP Purchasing

Date: 12/2/11

1.

## ADDITIONAL TERMS AND CONDITIONS

**1.** Taxes and Compliance. The Contract Price includes, and Contractor shall pay, all federal, state, local and other taxes imposed by law or contract and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for or in connection with the Service. For the avoidance of doubt, as between Contractor and CSXI Terminals, the latter shall not be responsible for sales, use, or other similar taxes imposed on this Contract or the Service provided hereunder. Contractor shall comply with, and perform the Service in compliance with, (a) all applicable federal, state and local statutes, laws, codes, ordinances, rules, regulations, orders, notices and requirements including but not limited to those relating to environmental pollution, clean air and water, and erosion control, and (b) all reasonable rules and regulations of CSXI Terminals. Listed prices DO NOT include NJ sales tax.

**2.** Time of the Essence. Contractor shall perform the Service in a good and workmanlike manner with diligence and continuity and shall complete the Service as required, using fully competent and qualified personnel with appropriate expertise, qualifications and experience. TIME IS OF THE ESSENCE AS TO EVERY PROVISION OF THIS AGREEMENT.

**3.** Payment. CSXI Terminals shall pay the Contract Price to Contractor for the Service in accordance with the provisions of this Agreement and acceptance thereof by CSXI Terminals. Any provision hereof to the contrary notwithstanding, CSXI Terminals shall have no obligation to pay any sum to Contractor hereunder (except as may otherwise be provided in Paragraph 6, hereof) prior to or upon termination of this Agreement by CSXI Terminals pursuant to the provisions of Paragraph 6 hereof or (b) if any of the Service is defective or is not performed in accordance with the provisions hereof; provided, however, that CSXI Terminals, at its option, may pay such portion of the Contract Price as is allocable in CSXI Terminals' sole opinion to the Service that is not defective and that is performed in accordance with the provisions hereof without waiving its rights with respect to the remainder of the Service and without being obligated to pay the remainder of the Contract Price. At the request of CSXI Terminals and upon the payment of the Contract Price, Contractor shall promptly execute and deliver to CSXI Terminals such final release and waiver of liens documents as may be requested by CSXI Terminals, when applicable.

**4.** Insurance. Prior to commencement of the Service, Contractor shall at its expense purchase, and thereafter until expiration or termination of this Agreement, Contractor shall maintain in full force and effect. (a) Workers' Compensation Insurance as required by applicable law, and Employer's Liability Insurance with a limit of not less than $1,000,000 per occurrence, and all such insurance must contain a waiver of subrogation against CSXI Terminals and its affiliated companies, (b) Commercial General Liability Insurance against claims for bodily injury, including death, and property damage with combined single limit coverage of not less than $5,000,000 per occurrence, together with contractual liability insurance applicable to Contractor's obligations under this Agreement in the same amount, all of which insurance shall not contain any exclusions for liabilities relating to railroad operations, (c) Business Automobile Liability Insurance with combined single limit coverage of not less than $3,000,000 per occurrence for bodily injury and/or property damage. All such coverage shall be provided by insurance companies licensed in the jurisdiction in which the Service is to be performed and otherwise reasonably satisfactory to CSXI Terminals. Prior to commencement of the Service, Contractor shall deliver to CSXI Terminals a certificate of insurance providing that such liability coverage shall not lapse or be cancelled or modified without 30 days prior written notice to CSXI Terminals. All such liability insurance policies shall designate CSXI Terminals and its affiliates as additional insureds thereunder. Contractor may not self-insure any portion of the insurance referenced in this section without the express prior written consent of CSXI Terminals, which CSXI Terminals may withhold in its sole discretion.

**5.** Indemnity. Contractor shall indemnify against and hold CSXI Terminals, CSXI Terminals' affiliated entities, and their respective shareholders, directors officers, employees, agents, and licensees harmless from any and all losses, damages, liabilities, demands, claims, suits, actions, costs and expenses, including, without limitation, attorneys' fees ("Losses"), arising out of or in connection with or in any way related to the performance of the Service or any act or omission of Contractor, its subcontractors and their respective shareholders, directors, officers, employees and agents, even if caused in part by the negligence of one of the indemnified parties, including, but not limited to, (a) personal injuries, death or property damage, (b) losses arising from the failure of Contractor to pay when due all subcontractors, mechanics and materialmen for work performed and materials furnished in connection with the Service and (c) losses arising from a breach by Contractor of the terms of this Agreement. To the extent this Indemnity provision is deemed to have violated any applicable law, this provision shall be deemed modified so as to require Contractor to indemnify CSXI Terminals and the indemnified parties to the greatest extent allowed by law. In addition to the obligations set forth above, Contractor's indemnification shall extend to the full amount of any judgment, award, or settlement incurred as a result of an indemnity event, regardless of Contractor's limits of insurance coverage. Contractor shall be entitled to reimbursement for the percentage of such a judgment, award or settlement attributable to CSXIT's gross negligence or willful misconduct that is beyond Contractor's insurance coverage. At the option of CSXI Terminals, (1) Contractor, at its own cost and expense, shall resist and defend any such claims, demands, suits and actions with counsel reasonably acceptable to CSXI Terminals (which counsel shall acknowledge in writing that they represent CSXI Terminals), or (2) CSXI Terminals may resist and defend such matters at the expense of Contractor with counsel selected by CSXI Terminals. In any event, CSXI Terminals shall control the conduct of any such

defense and must first approve in writing the compromise and settlement of any such claim, demand, suit or action.

**6.** Termination. CSXI Terminals shall have the right, in addition to any other rights and remedies provided by this Agreement, at law or in equity, to terminate this Agreement and the employment of Contractor for all or any portion of the unperformed Service, with or without cause, at any time upon no less than fifteen (15) days prior written notice. In the event of any such termination, Contractor shall be entitled to payment for only so much of the Contract Price as is allocable to that portion of the Service actually performed by Contractor in accordance with this Agreement up to the date of such termination.

**7.** Notices. Any notices, requests, demands and other communications required or permitted hereunder shall be in writing and delivered either in person, by UPS (or other comparable overnight delivery service) or by United States mail, registered or certified, return receipt requested, postage prepaid, to the addresses set forth above.

Any notice, request, demand or other communication delivered or sent in such manner shall be deemed given or made (as the case may be) (a) on the day on which it is actually delivered, or (b) on the date of rejection thereof as indicated in the return receipt therefor, whichever first occurs. Any party may change its address by notifying the other party of the new address in any manner permitted by this Paragraph.

**8.** Applicable Law. This Agreement shall be executed, construed, performed and enforced in accordance with the laws of the jurisdiction in which the Service is performed.

**9.** Successors and Assigns. Contractor shall not assign any of its rights or obligations hereunder without the prior written consent of CSXI Terminals, in CSXI Terminals' sole and absolute discretion. To the extent not prohibited hereunder, the covenants, terms, provisions and conditions herein contained shall apply to, bind and inure to the benefit of the respective successors and assigns of Contractor and CSXI Terminals. Any attempted assignment in violation of this Agreement shall be null and void ab initio.

**10.** Entire Agreement; Amendments. This Agreement supersedes all prior agreements, written or oral, between CSXI Terminals and Contractor and constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof. Neither this Agreement nor any provision hereof may be amended, waived, discharged or terminated orally, but only by an instrument in writing and signed by the parties hereto.

**11.** Meetings Contractor shall attend all meetings when called by CSXI Terminals for the purpose of discussing the performance of the Service. Each meeting will be held at the time and place designated by CSXI Terminals at the location in which the services are performed or a location mutually agreeable to both parties.

**12.** Independent Contractor. Contractor recognizes that it has been engaged by CSXI Terminals as an independent contractor and acknowledges that CSXI Terminals has no responsibility to provide transportation, insurance or other benefits normally associated with employee status. Contractor, in accordance with its status as an independent contractor, covenants and agrees that it will conduct itself consistent with such status, that it will neither hold itself out as, nor claim to be, an officer, partner, employee or agent of CSXI Terminals, and that it will not make any claim, demand or application for any right, privilege or benefit applicable to an officer, partner, employee or agent of CSXI Terminals, including, but not limited to, unemployment insurance benefits, social security coverage or retirement benefits. It is further understood and agreed that in no event shall CSXI Terminals be required to pay any employment or payroll tax or reimburse Contractor therefor, or to make deductions from payments or report earnings of employees or subcontractors of Contractor, under any provision of the Internal Revenue Code of 1986 as amended or any regulation promulgated thereunder, or under any state or local statute, rule or regulation imposing or levying a tax on payrolls or the compensation of employees; and Contractor hereby agrees to indemnify and save CSXI Terminals harmless from any and all liability, cost or expense arising or growing out of Contractor's failure to pay such taxes, including all reasonable attorney fees incurred in connection with defending against the assertion or imposition of such taxes or other charges.

**13.** Proprietary Interests. Contractor agrees that any reports, studies, plans, models, drawings, brochures, copy or any other information or data of any type prepared hereunder and relating to the Service, whether or not any of the same is accepted or rejected by CSXI Terminals, shall be and remain the property of CSXI Terminals.

**14.** Correction of Service. Contractor warrants to CSXI Terminals that any materials utilized to perform the Service will be new and all Service will be of good quality, free from faults and defects and in conformance with the requirements set forth in this Agreement. Contractor shall promptly correct any Service defect not in conformance with this Agreement and Contractor shall bear all costs of correcting such Service.

**15.** Limitation of Liability. Notwithstanding any obligation of CSXI Terminals to Contractor, no present or future agent, officer, director, employee, stockholder or partner of CSXI Terminals or anyone claiming under CSXI Terminals has or shall have any personal liability to Contractor or to anyone claiming through or under Contractor by reason of the execution or performance of this Agreement.

2

## ADDITIONAL TERMS AND CONDITIONS

16.   **Waivers**. No delay or omission by either of the parties hereto in exercising any right or power accruing upon the noncompliance or failure of performance by the other party hereto of any of the provisions of this Agreement shall impair any such right or power or be construed to be a waiver thereof. A waiver by either party hereto must be in writing.

17.   **Severability**. If any provision hereof shall, for any reason, be held invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid or unenforceable provision has not been included herein.

18.   **Survival**. The provisions of Paragraphs 1-3, 5, 13-15, 20 and 22 of these Additional Terms and Conditions shall survive the expiration or any termination of this Agreement.

19.   **Safety**. Contractor shall be responsible for initiating, maintaining and supervising a safety program in connection with the Service, and shall provide all protection necessary to prevent injury to all persons involved in any way in the Service. Contractor shall set forth, in writing, its safety program in connection with the Service and, if requested by CSXI Terminals, promptly submit the same to CSXI Terminals for review and approval. Contractor and all persons involved shall receive Rail Safety Training at the Terminal to prevent rail-related injuries. Contractor will further comply with all safety rules and regulations established or provided by CSXI Terminals or any of its affiliates immediately upon entering onto property of CSXI Terminals or its affiliates, before commencing work, and while performing work on such property. Noncompliance shall be considered a material breach of this Agreement. Upon any such breach, CSXI Terminals shall have the right to terminate this Agreement and to require Contractor and its agents and employees to leave the premises immediately.

20.   **Audit**. Contractor will permit authorized representatives of CSXI Terminals, and its affiliates to make, at all reasonable times, examinations of its books and records pertaining to the performance of this Agreement throughout this Agreement term and for three years from the date of its expiration. Contractor agrees to properly maintain and preserve its books and records pertaining to the performance of this Agreement for at least three years after expiration or any termination of the Agreement.

21.   **Background Checks**: Contractor shall comply with employee criminal background checks as required and outlined in Exhibit B, attached hereto and incorporated herein by this reference.

22.   **Confidentiality Obligations**. In connection with its performance under this Agreement, CSXI Terminals may make available to Contractor (which shall include Contractor's employees and agents) , or Contractor may learn, certain information, including but not limited to, the identity of CSXI Terminals' customers, origin and destination information, cargo data, Terminal data, reports, interpretations, forecasts, and other records and information that CSXI Terminals regards as confidential (the "Confidential Information"). Contractor hereby agrees (a) to treat all Confidential Information (whether prepared by CSXI Terminals, its representatives, advisors or otherwise and irrespective of the form of communication) which is furnished to or learned by Contractor now or in the future in strict confidence, (b) to refrain from making any copies of the Confidential Information except where necessary to carry out its obligations under this Agreement, (c) to make no use of the Confidential Information except as contemplated by this Agreement; (d) to restrict disclosure to its employees and agents with a need to know and inform such employees and agents of the confidentiality obligations of this Agreement; and (d) not to disclose such Confidential Information to any other third party without CSXI Terminals' prior written consent. In any event, Contractor shall be responsible for any breach of these confidentiality obligations by its contractors, employees and agents. This confidentiality requirement shall not apply to any Confidential Information which (i) was already known to Contractor without similar restrictions and without breach thereof prior to being disclosed by CSXI Terminals; (ii) was or becomes publicly known through no wrongful act of Contractor; (iii) was rightfully obtained by Contractor from a third party without similar restrictions and without breach thereof; (iv) was used or disclosed by Contractor with the prior written authorization of CSXI Terminals; (v) was independently developed by Contractor without the use of CSXI Terminals' Confidential Information or any breach hereof; (vi) was disclosed pursuant to the requirement of a governmental agency, which disclosure cannot be made in confidence; or (vii) was disclosed pursuant to the order of a court of competent jurisdiction or a lawfully issued subpoena.

**EXHIBIT A**

***DESCRIPTION OF THE SERVICE***

**SNOW PLOWING AND REMOVAL SPECIFICATIONS**

1.  Contractor shall supply sufficient manpower and equipment to safely and effectively keep operating areas, walkways, and roadways clear of snow and ice.

2.  Contractor shall take special care to insure that snow is not pushed under the nose (front) of intermodal equipment, thereby preventing access to said equipment by trucks.

3.  Contractor shall remove snow to designated areas and shall haul off site when requested by CSXI Terminals.

4.  Contractor shall apply and spread salt and/or deicers per CSXI Terminals request. Said salt and/or deicers may be provided from time to time by CSXI Terminals and at CSXI Terminals' sole discretion. Contractor shall supply salt and/or deicers at the request of CSXI Terminals.

5.  All Contractor operators shall be fully qualified and licensed as applicable by law, to operate Contractor's equipment upon a CSXI Terminals property.

6.  Contractor shall respond and be available to provide service within one (1) hour from the initial request for service from CSXI Terminals.

7.  Contractor shall provide a twenty-four (24) hour response contact party and phone number and shall make all necessary arrangements for substitute points of contact as necessary due to illness, vacations or other occasions when the primary contact is not available.

8.  Contractor shall supply service only upon the request of the authorized CSXI Terminals representative.

9.  All Contractor equipment to be operated at a CSXI Terminals property shall have working backup safety alarms and shall be in safe mechanical operations including but not limited to proper working safety devices. Fluid leaks shall be monitored and prevented by Contractor personnel so as not to endanger the environment, property or create hazardous areas upon the CSXI Terminals property.

10. Contractor shall supply the local CSXI Terminals Terminal Management with 24 hour, 7 day per week contact names, email addresses and phone numbers; and, shall keep local CSXI Terminals Terminal Management informed of any changes in said contact names, email addresses and/or phone numbers.

11. Contractor bears sole responsibility for and indemnifies and holds CSXI Terminals harmless for any damage or loss to vehicles or property left on CSXI Terminals property unattended.

12. Contractor will photograph and stake out property prior to the first snow event of each year. Damage to CSXI Terminals facilities by snow removal equipment will be repaired within 30 days or as soon as weather conditions permit. Repairs to CSXI Terminals property will be made only with contractors approved by CSXI Terminals and with a proper work agreement.

13. Contractor will supply, within thirty (30) days of the effective date of this Agreement, a Safety Action Plan outlining, at a minimum, safety training, oversight and operating practices.

4

## EXHIBIT B

## *EMPLOYEE BACKGROUND CHECKS*

<u>Background Checks</u>. Contractors and their subcontractors performing Services on the Terminal must, at their own expense, complete the e-RAILSAFE Program, including completing the background screening process and receiving the photo identification badge prior to being provided access to the Terminal. Ongoing compliance with the e-RAILSAFE Program will be audited by CSXI Terminals, or its affiliate, throughout the duration of any Services performed by Contractor and its subcontractors. For questions, please contact e-VERIFILE at (770) 859-9899 or visit their web site at <u>www.e-railsafe.com</u>.

<u>Drug Testing Policy</u>. Contractor shall have a drug and/or alcohol testing policy, and shall require its employees to perform in accordance with the aforementioned policy. Contractor agrees to provide to CSXI Terminals a copy of such policy within thirty days of the effective date of this Agreement, and thereafter within thirty days of any amendment to said policy.

## EXHIBIT C

## *COMPENSATION RATES AND INVOICE REQUIREMENTS*

**COMPENSATION RATES:**

1. **General:**

CSXI Terminals shall pay Contractor for the performance of Services, in accordance with either the Fixed Bid Pricing or Unit-Based Pricing set forth and defined below; provided, however, that CSXI Terminals shall have the right, in its sole discretion, to select which pricing method is utilized. As of the Effective Date of this Agreement, CSXI Terminals selects the Fixed Bid Pricing, but may change from one method to the other, in its sole discretion, upon thirty (30) calendar days notice to Contractor.

Regardless of the pricing method, Contractor shall have a response time of no more than 2 hours for all snow operations and shall complete the Services within a reasonable time using an efficient and workmanlike manner, in accordance with the acceptable industry standards.

With regard to the application of salt, Contractor's use of salt requires pre-approval by Terminal Manager or designated CSXIT employee. Salt will be provided by CSXIT.

2. **Fixed Bid Pricing**

The "Fixed Bid Pricing" shall mean the rate listed below in Table 1 in this Section 2 (as may be adjusted pursuant to the Fixed Bid Pricing Adjustments section) based upon the corresponding snow fall (measured in inches to the nearest one hundredth) that accumulates during a specific Snow Event (defined below), as such snow fall is calculated by adding the amount of snowfall for each day of the Snow Event as reported by Weather Works, LLC (a NJ limited liability company), via a Certified Snowfall Totals report for Kearny, NJ 07032, listing the date, state, city, zip code, precipitation type, and total snowfall (in inches). The Certified Snowfall Totals report and any such other related services provided by Weather Works LLC shall be at Contractor's sole expense. At CSXI Terminals request, Contractor shall provide all necessary Certified Snowfall Totals reports to CSXI Terminals for review. In the event Weather Works LLC is unable to provide a Certified Snowfall Totals report, as required under this Agreement, the parties agree to use the National Weather Service (NWS) "Raw Snowfall Observation" for Kearny, NJ, unless the parties agree otherwise. The Fix Bid Pricing shall be itemized by the Contractor on a per Snow Event basis.

Each "Snow Event" shall mean the period of time (measured in days) starting at 12am on the day the Contractor commences performance of the Service described hereunder and continuing until 11:59pm on the day the Contractor is dismissed from the Terminal in writing by the Terminal Manager. For the avoidance of doubt and solely for purposes of calculating the Fixed Bid Pricing, in no event shall any two Snow Events occur on the same day, in such a case, the subsequent Snow Event shall be deemed to start the following day.

The Fixed Bid Pricing shall be all-inclusive of management, supervision, fuel, maintenance, labor, manpower, taxes, parts, equipment, tools, supplies and any and all other costs of overhead and profits to supply the Service (other than for the itemized services listed in Table I, salt application and off-site haulage). The itemized services listed in Table I, salt application and off-site haulage, shall be available at the request of CSXI Terminals under this pricing method.

*As an example of the Fixed Bid Pricing calculation:*
For example purposes only, if, at the Terminal Manager's request, the Contractor commences performance of the Services at 5pm on Feb. 11th and is dismissed from the Terminal by the Terminal Manager at 7pm on Feb. 12th. The specific Snow Event shall be defined as Feb. 11-12. If, for example, according to Weather Works LLC, the Certified Snowfall Totals report lists 10 inches as the amount of snowfall on Feb. 11th for Kearny, NJ 07032 and 12 inches as the amount of snowfall on Feb. 12th for Kearny, NJ 07032. The Fixed Bid Pricing for the Feb. 11-12 Snow Event shall be $92,940.00 for 22 inches of snow (10 inches plus 12 inches).

**Fixed Bid Pricing Adjustments:**
The rates listed below in Table 1 in this Section 2 of this Exhibit C shall be effective from the Effective Date until the second anniversary of the Effective Date of this Agreement. Effective upon the second anniversary of the Effective Date,

6

## EXHIBIT C

the rates listed in Table I shall be reduced by 1%.  Effective upon the third anniversary of the Effective Date, the rates listed in Table I shall be reduced by 2%.  Effective upon the forth anniversary of the Effective Date, the rates listed in Table I shall be reduced by 3%.

**Table I:**

** Please Note - Rates provided do NOT include NJ sales tax**

| Snow Fall | UOM | Rate (all hours) |
|---|---|---|
| 0-5.99 inches | Flat Rate | $   37,176.00 |
| 6-11.99 inches | Flat Rate | $   55,764.00 |
| 12-17.99 inches | Flat Rate | $   74,352.00 |
| 18-23.99 inches | Flat Rate | $   92,940.00 |
| 24-27.99 inches | Flat Rate | $ 111,528.00 |
| 28-31.99 inches | Flat Rate | $ 130,116.00 |
| 32-37.99 inches | Flat Rate | $ 148,704.00 |
| 38 and above inches | Flat Rate *per inch* | $     9,294.00 |
| Salt Application to entire complex (Salt supplied by CSXI Terminals) | Per Application | $     3,400.00 |
| | | |
| Off site haulage | hr | $      125.00 |
| Minimum fixed rate fee that will be billed per trip to terminal | Hours | $0.00 |
| Overtime % mark up | % | 0.00% |
| Holiday % mark up | % | 0.00% |
| Supply Bulk Salt/del. per ton | | 83.80 |

*Handwritten annotations:*

\* 32"-37.99 inch rate plus 38" per inch rate. for every inch above 38"

ex. 40" storm

148,704.00    32-37.99"
9,294    38"
9,294    39"
+ 9,294    40"

total $176,586   40" storm

### 3.   Unit-Based Pricing

The "Unit-Based Pricing" shall mean the rates listed below in Table II in this Section 3 of this Exhibit C for the specified service or equipment per the specified unit of measure.  Notwithstanding anything to the contrary in this Agreement, the rates in Table II below will apply if contractor is requested to provide service if no measurable snow has fallen.  Contractor will obtain approval from CSXIT Terminal Manager or other designated CSXIT employee prior to bringing equipment on site.  The Unit-Based Pricing shall not be increased during the Term of this Agreement and shall be all-inclusive of management, supervision, fuel, maintenance, labor, manpower, taxes, parts, supplies and any and all other costs of overhead and profits to supply the equipment and/or service. But does not include NJ sales tax.

| Equipment Type/Description | UOM | Rate (standard hours) |
|---|---|---|
| 5 Cu Yd Loader | Hr | $357.50 |
| 1 - 3 Cu Yd Loader | Hr | $260.00 |
| Backhoe Loader | Hr | $162.50 |
| Skid Steer Loader | Hr | $130.00 |
| Truck w/6 foot snow plow | Hr | $130.00 |

**EXHIBIT C**

| | | |
|---|---|---|
| Truck w/ 6.1 ft - 8 ft plow | Hr | $140.00 |
| Truck w/ 8.1 ft - 10.6 ft plow | Hr | $175.00 |
| 1 Cu yd capacity salt truck | Hr | $225.00 |
| 1.1 - 3 Cu Yd Capacity Salt Truck | Hr | $275.00 |
| 3.1 - 5 Cu Yd Capacity Salt Truck | Hr | $325.00 |
| Site Manager / Safety Officer | Hr | $140.00 |
| Laborer | Hr | $54.00 |
| 16 ft - 20 ft Snow Pusher for Loader | Hr | $155.00 |
| 14 ft - 16 ft Snow Pusher for Loader | Hr | $140.00 |
| 12 ft Snow Pusher for Backhoe Loader | Hr | $87.00 |
| 12 ft Angled Snow Pusher for Backhoe Loader | Hr | $105.00 |
| 12 ft Power Angle snow plow for Skid Steer | Hr | $105.00 |
| Single Stage Snowblower | Hr | $12.00 |
| Two Stage Snowblower | Hr | $17.00 |
| Calibrated salt spreader for walkways | Hr | $7.00 |
| Dump Truck for Hauling Snow | Hr | $125.00 |
| Supply/Deliver Bulk Rock Salt | Yd | $94.80 |
| Supply/Deliver Treated Bulk Rock Salt | Yd | $114.80 |
| Application of bulk rock salt to entire complex ( Salt Supplied by CSXI Terminals) | Per Application | $3,400.00 |
| Overtime % mark up | % | 0% |
| Holiday % mark up | % | 0% |
| Off site haulage | Hr | $125.00 |
| Minimum number of hours that will be billed per trip to terminal | Hours | 0 |

**INVOICE REQUIREMENTS:**

Detailed invoices shall be submitted for work performed on a timely basis and shall include all necessary back up documentation at the time the invoice is presented. Invoices shall be presented to the local Terminal Manager for approval prior to being forwarded to Jacksonville headquarters for payment. Payment terms are to be Net 30 Days from receipt of a valid invoice from Contractor. No invoice will be paid unless the terminal manager or designated employee has signed off on completion of work being completed to the satisfaction of CSXIT.

[END OF AGREEMENT]

# EXHIBIT B



**WINTER SERVICES INC.**
*Total Focus on Snow & Ice*

33 Daret Drive
Ringwood, NJ 07456
www.WinterServices.net

(973) 316-0010
(973) 962-8900 fax
E-Mail: Accounting@WinterServices.net

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 3/2/2016 | 26848 |

| BILL TO | SHIP TO |
|---------|---------|
| CSX<br>700 Fish House Road<br>South Kearney, NJ 07032 | CSX<br>700 Fish House Road<br>South Kearney, NJ 07032<br>Attn: Christopher Beyer<br>Accounts Payable |

| P.O. Number | REP | Terms | Due Date | STORM TOTAL | Job/Contract # |
|-------------|-----|-------|----------|-------------|----------------|
|  |  | Net 30 | 4/1/2016 | Stacking & Hauling |  |

| Date | Quantity | Description | Rate | Amount |
|------|----------|-------------|------|--------|
| 1/25/2016 | 51 | Trucking – hauling Sunday 1/24/16 9AM – 12PM Tuesday 1/26/16 51 hours | 125.00 | 6,375.00T |
| 1/25/2016 | 51.5 | Trucking – hauling Sunday 1/24/16 9AM – 12:30PM Tuesday 1/26/16 51.5 hours | 125.00 | 6,437.50T |
| 1/25/2016 | 51.5 | Trucking – hauling Sunday 1/24/16 9AM – 12:30PM Tuesday 1/26/16 51.5 hours | 125.00 | 6,437.50T |
| 1/25/2016 | 57 | Trucking – hauling Sunday 1/24/16 8AM – 5PM Tuesday 1/26/16 57 hours | 125.00 | 7,125.00T |
| 1/25/2016 | 57 | Trucking – hauling Sunday 1/24/16 8AM – 5PM Tuesday 1/26/16 57 hours | 125.00 | 7,125.00T |
| 1/25/2016 | 57 | Trucking – hauling Sunday 1/24/16 8AM – 5PM Tuesday 1/26/16 57 hours | 125.00 | 7,125.00T |
| 1/23/2016 | 91 | Machine Work - WA380 Loader 1 Saturday 1/23/16 12AM to 7PM Tuesday 1/26/16  91 hours | 357.00 | 32,487.00T |
| 1/24/2016 | 59 | Machine Work - CAT950 loader 2 - Sunday 1/24/16 8AM to 7PM Tuesday 1/26/16  59 hours | 357.00 | 21,063.00T |
| 1/24/2016 | 59 | Machine Work - Komatsu 380 loader 3 - Sunday 1/24/16 8AM to 7PM Tuesday 1/26/16  59 hours | 357.00 | 21,063.00T |
| 1/24/2016 | 59 | Machine Work WA250 loader 4 Sunday 1/24/16 8AM to 7PM Tuesday 1/26/16  59 hours | 260.00 | 15,340.00T |
| 1/24/2016 | 59 | Machine Work CAT414E backhoe 1 Sunday 1/24/16 8AM to 7PM Tuesday 1/26/16  59 hours | 162.00 | 9,558.00T |

| | |
|---|---|
| **Total** | |
| *Payments/Credits* | |
| **Balance Due** | |



**WINTER SERVICES INC.**
*Total Focus on Snow & Ice*

33 Daret Drive
Ringwood, NJ 07456
www.WinterServices.net

(973) 316-0010
(973) 962-8900 fax
E-Mail: Accounting@WinterServices.net

# Invoice

| DATE | INVOICE # |
|---|---|
| 3/2/2016 | 26848 |

| BILL TO | SHIP TO |
|---|---|
| CSX<br>700 Fish House Road<br>South Kearney, NJ 07032 | CSX<br>700 Fish House Road<br>South Kearney, NJ 07032<br>Attn: Christopher Beyer<br>Accounts Payable |

| P.O. Number | REP | Terms | Due Date | STORM TOTAL | Job/Contract # |
|---|---|---|---|---|---|
| | | Net 30 | 4/1/2016 | **Stacking & Hauling** | |

| Date | Quantity | Description | Rate | Amount |
|---|---|---|---|---|
| 1/24/2016 | 59 | Machine Work Case580 backhoe 2  Sunday 1/24/16 8AM to 7PM Tuesday 1/26/16  59 hours | 162.00 | 9,558.00T |
| 1/24/2016 | 10 | Machine Work CAT950 loader 1 Wednesday 1/27/16 6AM to 4PM  10 hours | 357.00 | 3,570.00T |
| 1/24/2016 | 10 | Machine Work Komatsu 380 loader 2 Wednesday 1/27/16 6AM to 4PM  10 hours | 357.00 | 3,570.00T |
| | | Services approved by Drew Gray per email to Travis Perrone | | |
| | | Stacking & hauling on site for CSX for Blizzard snow | | |
| | | NJ State Sales Tax | 7.00% | 10,978.38 |

| | Total | $167,812.38 |
|---|---|---|
| | **Payments/Credits** | *$0.00* |
| | **Balance Due** | $167,812.38 |



**WINTER SERVICES INC.**
*Total Focus on Snow & Ice*

33 Daret Drive
Ringwood, NJ 07456
www.WinterServices.net

(973) 316-0010
(973) 962-8900 fax
E-Mail: Accounting@WinterServices.net

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 3/5/2016 | 27161 |

| BILL TO | SHIP TO |
|---------|---------|
| CSX<br>700 Fish House Road<br>South Kearney, NJ 07032 | CSX<br>700 Fish House Road<br>South Kearney, NJ 07032<br>Attn: Christopher Beyer<br>Accounts Payable |

| P.O. Number | REP | Terms | Due Date | STORM TOTAL | Job/Contract # |
|-------------|-----|-------|----------|-------------|----------------|
|  |  | Net 30 | 4/4/2016 | rain to /ice event |  |

| Date | Quantity | Description | Rate | Amount |
|------|----------|-------------|------|--------|
| 2/16/2016 | 1 | Application of ice melt to entire complex (Salt supplied by CSXI Terminal) | 3,298.00 | 3,298.00T |
|  |  | NJ State Sales Tax | 7.00% | 230.86 |

| | |
|---|---|
| **Total** | $3,528.86 |
| *Payments/Credits* | $0.00 |
| **Balance Due** | $3,528.86 |



**WINTER SERVICES INC.**
*Total Focus on Snow & Ice*

33 Daret Drive
Ringwood, NJ 07456
www.WinterServices.net

(973) 316-0010
(973) 962-8900 fax
E-Mail: Accounting@WinterServices.net

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 5/1/2015 | 26210 |

| BILL TO |
|---------|
| CSX<br>700 Fish House Road<br>South Kearney, NJ 07032 |

| SHIP TO |
|---------|
| CSX<br>700 Fish House Road<br>South Kearney, NJ 07032<br>Attn: Christopher Beyer<br>Accounts Payable |

| P.O. Number | REP | Terms | Due Date | STORM TOTAL | Job/Contract # |
|-------------|-----|-------|----------|-------------|----------------|
|  |  | Net 30 | 5/31/2015 |  |  |

| Date | Quantity | Description | Rate | Amount |
|------|----------|-------------|------|--------|
| 1/26/2015 | 24 | 10pm-10am, 2 trucks on site for stacking and relocation of snow, authorized by Chris Beyer | 125.00 | 3,000.00T |
| 1/26/2015 | 16 | 10pm-6am, 2 trucks on site for stacking and relocation of snow, authorized by Chris Beyer | 125.00 | 2,000.00T |
| 1/26/2015 | 24 | Machine Work, 10pm-10am, QTY. 2, 5 YARD LOADERS FOR LOADING TRUCKS, STACKING PILES, EXTRA CLEAN UP, Authorized by Chris Beyer | 357.50 | 8,580.00T |
| 1/28/2015 | 4 | Machine Work 9:30am-1:30pm, 5 yard loader for cleaning up trackside, authorized by Chris Beyer | 357.50 | 1,430.00T |
| 2/2/2015 | 26 | Machine Work, 2pm-3am, QTY. 2, 5 YARD LOADERS FOR FOR STACKING PILES HIGHER AND CLEARING OUT WHERE CHASSIS WERE MOVED, Authorized by Chris Beyer | 357.50 | 9,295.00T |
| 2/3/2015 | 5.5 | Machine Work 9.30am-5pm QTY. 1, 5 YARD LOADER FOR MACHINE WORK FOR Stacking & relocation, authorized by Chris Beyer | 357.50 | 1,966.25T |
| 2/18/2015 | 2 | Machine Work 2 hours pushing salt into salt shed | 357.50 | 715.00T |
| 3/18/2015 | 1 | Machine Work 1 hour pushing salt into salt shed | 357.50 | 357.50T |
| 3/31/2015 | 3 | Machine Work 9am-12pm Grading/Drainage work in A lot with Cat Loader | 357.50 | 1,072.50T |
| 4/14/2015 | 1 | Machine Work 1 hour pushing salt into salt shed | 357.50 | 357.50T |
|  |  | NJ State Sales Tax | 7.00% | 2,014.16 |

| | |
|---|---|
| **Total** | $30,787.91 |
| *Payments/Credits* | $0.00 |
| **Balance Due** | $30,787.91 |

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-004603-17

**Case Caption:** WINTER SERVICES, INC . VS CSX INTERMODAL TERMI N

**Case Initiation Date:** 11/09/2017

**Attorney Name:** PATRICK THOMAS MURRAY III

**Firm Name:** PECKAR & ABRAMSON, PC

**Address:** 70 GRAND AVE

RIVER EDGE NJ 076611934

**Phone:**

**Name of Party:** PLAINTIFF : Winter Services, Inc.

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** BOOK ACCOUNT (DEBT COLLECTION MATTERS ONLY)

**Document Type:** Complaint

**Jury Demand:** NONE

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

---

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
> **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
> **If yes, for what language:**

---

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

| | |
|---|---|
| <u>11/09/2017</u> | <u>/s/ PATRICK THOMAS MURRAY III</u> |
| Dated | Signed |